```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                    LAREDO DIVISION
```

| | | |
|---|---|---|
| MANUEL M GARCIA SR. *et al* | § | |
| | § | |
| Plaintiffs | § | |
| VS. | § | CIVIL ACTION NO. L-09-30 |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM AND ORDER

On March 19, 2009, Plaintiffs commenced this action for monetary relief based on Defendant United States' taking of approximately 440.7 acres of land in Zapata County, Texas, designated Tract 3 of Parcel Z-229-B. (Dkt. 1, Compl. 2.) Plaintiffs Manuel Garcia, Sr., Manuel Garcia, Jr., and Jose Luis Pena claim to be unspecified descendants of "Refugio Garcia, et al," whom they allege owned the land when it was taken in 1952. (Id.)

## I. BACKGROUND

### A. The Condemnation Proceeding

In the 1940's, Congress authorized the United States to take lands necessary to carry out the "Falcon Reservoir—Rio Grande International Dams Project," an undertaking that attracted great notoriety in South Texas and involved the inundation of the then-existing town of Zapata. See Bank One

*Tex. Nat'l Ass'n v. United States*, 157 F.3d 397, 400, 400 n.2 (5th Cir. 1998). The extent and value of the takings were determined in a lengthy condemnation proceeding in the Southern District of Texas, *United States v. 85,237 Acres of Land, More or Less, in Zapata County, Tex.*, 157 F. Supp. 150, Civ. No. 529 (S.D. Tex. 1957), *aff'd*, 252 F.2d 116 (5th Cir. 1958), ("Civil Action 529"). On June 16, 1952, the United States filed Declaration of Taking No. 21 in Civil Action 529, declaring that the United States had taken lands including Tract 3 of Parcel Z-229-B. The United States' Declaration of Taking listed "Refugio Garcia, et al" as the purported owners of Tract 3 of Parcel Z-229-B. On June 27, 1952, Judge James Allred issued a Judgment on Declaration of Taking No. 21 ordering that fee simple title to Parcel Z-229-B, subject to certain easements, be vested in the United States as of June 16, 1952. On October 17, 1956, Judge Allred issued a Judgment on Stipulation Exclusion in which he found that the parties to Civil Action 529 who appeared to own Parcel Z-229-B had agreed to accept $9,043, along with 3 tracts of land in New Zapata costing $150, as full settlement of any and all claims arising out of the condemnation. Plaintiffs' alleged predecessor-in-interest, Refugio Garcia, was not listed among the parties to the stipulations regarding Parcel Z-229-B. On August 10, 1970, Judge Ben C. Connally signed three orders in Civil Action 529; the last, titled "Order Closing Civil Action,"

applied to "All Parcels" and "All Declarations of Taking," and declared that "all matters and controversies have been adjudicated in the above captioned civil matter . . . ."

B. Recent Litigation

*The 1995 Rule 60 Motion*

On October 10, 1995, a Rule 60(b), Fed. R. Civ. P. motion to reopen the condemnation proceeding was filed by Bank One, Texas, N.A. and several other persons ("the 1995 movants"), none of whom are parties to the action currently before the Court. The motion pertained to the original case, Civil Action No. 529, but was assigned civil cause number L-95-529. The 1995 movants claimed mineral interests in certain parcels of land condemned in Civil Action 529 in the 1950 Judgment on Declaration of Taking. In an Order of December 7, 1996, the Court denied the motion as barred by the statute of limitations in the Quiet Title Act, 28 U.S.C. § 2409a ("QTA"), which the Court held was the sole means to challenge the United States' title to land. The 1995 movants subsequently filed a Rule 59(e) motion to amend the Court's Order. Some of the movants argued that their mineral interests had vested in them before Civil Action 529 began in 1949, and that they were thus owners of the interests who were not named or served in the original action. They sought to set aside the "default judgment" against them. In a

Memorandum of January 30, 1997, the Court rejected that argument, pointing out that a person who is not named or served in an action, and who does not appear, is not a party to the action, and therefore could not be in default. The Court reiterated that the proper vehicle for movants to assert their claims would still be under the QTA.

The Court of Appeals for the Fifth Circuit affirmed, though not on the basis of the Court's holding that the QTA was the sole means to challenge the United States' title. <u>United States v. 85,237 Acres of Land, More or Less, in Zapata County, Tex.</u>, No. 97-40149 (5th Cir. Sept. 17, 1997) (unpublished). The Fifth Circuit held that the 1970 Order Closing Civil Action was a final judgment "adjudicate[ing] all the controversies with respect to all the parties in the civil action." <u>Id.</u> at 2. The Fifth Circuit also held that any legitimate land owners who did not receive notice or voluntarily appear in Civil Action 529 were never parties to that proceeding, and must therefore "assert their claims via an independent action against the United States, not by a Rule 60(b) motion. <u>Id.</u> at 5.

*The 1996 QTA Action*

While their appeal of the dismissal of their Rule 60 motion was pending, the 1995 movants brought a separate QTA action, <u>Bank One, Texas, National Ass'n v. United States</u>, challenging

the United States' title to the same mineral interests at issue in their earlier motion. Civ. No. L-96-51. In a Memorandum of July 11, 1997, the Court granted summary judgment for the United States on the ground that the plaintiffs failed to bring the QTA within the 12-year statute of limitations.

On appeal, the Fifth Circuit construed this Court's action as a dismissal for lack of subject-matter jurisdiction, and affirmed. Bank One, 157 F.3d at 399, 401 n.9.

*Plaintiff Garcia's 2006 Rule 60 Motion*

On August 25, 2006, one of the Plaintiffs in the instant case, Manuel Garcia, Jr. ("Garcia"), filed a petition to "reinstate" Civil Action 529 with respect to Parcel Z-229-B. This Court construed the petition as a Rule 60(b) motion. The motion contained the original cause number 529 but was also assigned civil cause number L-95-529. In a Memorandum of January 20, 2007, the Court denied the motion on multiple grounds. First, to the extent Garcia was arguing that his alleged predecessor-in-interest never appeared in or received notice of Civil Action 529, the Fifth Circuit had already held that he would lack standing to file a Rule 60 motion relating to that proceeding. United States v. 85,237 Acres of Land, More or Less, in Zapata County, Tex., No. 97-40149 at 5 (5th Cir. Sept. 17, 1997) (unpublished). Second, the Court observed that to the

extent Garcia was claiming that there were defects in the condemnation proceedings other than lack of notice, he could not prevail for "a myriad of reasons." Not the least of those reasons was that "[a]nyone claiming an interest in Parcel Z-229-B must have known that the Government condemned this property over 50 years ago," and therefore any claim of title would be barred by limitations. Garcia did not appeal the denial of his petition.

*Plaintiffs' Present Action*

Garcia, joined by the other two Plaintiffs, now bring this new action in which they claim to be descendants of the original owners of "Parcel, Z-229-B, TRACK [sic] 3." In vague, conclusory terms, they assert various tort claims for injuries arising from the taking of that parcel:

> This is a civil action to recover monetary damages, interest, business losses and business good will, and in the alternative to vitiate [the] taking of plaintiffs' private lands as a result of defendants [sic] wrongful taking in violation of the United States Constitution.

The United States moves to dismiss for lack of subject-matter jurisdiction on the ground that Congress has not waived sovereign immunity with respect to any of Plaintiffs' claims.

### III. DISCUSSION

**A. Sovereign Immunity**

The United States is immune from suit without its consent. <u>Swift v. U.S. Border Patrol</u>, 578 F. Supp. 35, 37 (S.D. Tex. 1983.)  The limits of the United States' consent to be sued define the district courts' jurisdiction to entertain suits against it.  <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 475 (1994); <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941).  For example, without a waiver, sovereign immunity deprives this Court of jurisdiction to hear claims for monetary compensation brought under the Takings Clause of Fifth Amendment.  <u>See</u> <u>United States v. Land</u>, 213 F.3d 830, 837 (5th Cir. 2000) (district courts lack jurisdiction to hear just compensation counterclaims in condemnation actions filed by the United States, because condemnation statutes do not waive sovereign immunity).

Plaintiffs have the burden to prove that the United States has waived sovereign immunity with respect to their claims. <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001). The United States argues that Plaintiffs' claims do not fall within any waiver of sovereign immunity because the statutes of limitations have long since expired for whatever claims Plaintiffs might have once had.  (Dkt. 7, Mot. Dismiss 2.)

B. Statutes of Limitations

*Challenges to United States' Title*

Insofar as Plaintiffs challenge the United States' title to Parcel Z-229-B, their suit must fall within the waiver of sovereign immunity in the QTA, which is the "sole basis for a waiver of sovereign immunity as to claims involving title to real property." Independence Hill, Ltd. v. Puller Mortgage Associates, Inc., 33 F.3d 1378) (table), 1994 WL 486953 at *19 (5th Cir., Aug. 10, 1994) (unpublished table decision) (citation omitted); see also Block v. North Dakota, 461 U.S. 273, 280, 286 (1983); United States v. Mottaz, 476 U.S. 834, 841-43 (1986). A condition of the QTA's waiver is that a plaintiff brings any action within "twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g); see also Bank One, 157 F.3d at 402 (QTA's time limitation conditions its waiver of sovereign immunity). That condition is one prerequisite to this Court's jurisdiction to hear QTA actions, and it must be construed strictly in favor of the United States. Block, 461 U.S. at 287, 292; Bank One, 157 F.3d at 403. QTA rights of action accrue "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g); Bank One, 157 F.3d at 402.

*Tort Claims*

The Federal Tort Claims Act ("FTCA") contains the United States' exclusive waiver of sovereign immunity from tort claims. 28 U.S.C. § 2679(a). With certain exceptions, the FTCA waives sovereign immunity from civil actions for injuries caused by government employees acting in the scope of their duties, for which the United States, if a private person, would be liable under the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). To bring a claim under the FTCA, a claimant must file an administrative claim within two years after the claim accrues, and then file suit within six months after the administrative claim is denied. 28 U.S.C. 2401(b); <u>Houston v. U.S. Postal Service</u>, 823 F.2d 896, 902 (5th Cir. 1987). This requirement limits the Court's jurisdiction to hear FTCA actions. <u>Id.</u> Although the United States' liability in FTCA actions depends on the law of the place where the tort occurred, federal law determines when an FTCA claim accrues. <u>Johnston v. United States</u>, 85 F.3d 217, 219 (5th Cir. 1996). Plaintiffs do not even attempt to show that they filed any administrative claim for tort injuries. For that matter, nothing in the long history of this dispute suggests any "tort" committed by federal agents in connection with these condemnations. Moreover, at the latest, an FTCA claim accrues "'when the plaintiff knows or has reason to know of the injury

which is the basis of the action.'" Ramming, 281 F.3d at 162 (quoting Brown v. Nationsbank Corp., 188 F.3d 579, 589-90 (5th Cir. 1999)).

*Other Civil Claims*

Aside from appearing to challenge the United States' title and making various conclusory allegations sounding in tort, it is unclear what causes of action Plaintiffs mean to assert in their complaint, but all conceivable claims appear to be time-barred. The maximum time limit for commencing other civil actions against the United States would be set by Section 2401(a) of Title 28:

> Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

28 U.S.C. § 2401(a). Among the actions for which § 2401(a) limits the United States' waiver of sovereign immunity are takings claims brought under the "Little Tucker Act," which provides district courts with jurisdiction over:

> [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . .

28 U.S.C. 1346(a)(2); see also McGuire v. United States, 550 F.3d 903, 910 (9th Cir. 2008) (Little Tucker Act waives United States' sovereign immunity); Hoffmann v. U.S., 17 Fed. App'x 980, 987 (Fed. Cir. Aug. 16, 2001) (unpublished) ("The six-year statute of limitations of the Little Tucker Act, 28 U.S.C. § 2401(a) (1994), is a limitation on the district court's jurisdiction." (citing Bray v. United States, 785 F.2d 989, 992 (Fed. Cir. 1986)).[1]

Like the time limitations in the QTA and FTCA, § 2401(a) limits the Court's jurisdiction. Dunn-McCampbell Royalty Interest, Inc. v. National Park Service, 112 F.3d 1283, 1287 (5th Cir. 1997). A right of action accrues for purposes of § 2401(a) when a plaintiff knew, or should have known, that he was injured by the United States. See United States v. Wright, 361 F.3d 288, 290 (5th Cir. 2004)(section 2401(a)'s limitations period did not run for a Federal Rule of Criminal Procedure 41(g) motion challenging forfeiture of seized cash until the claimant was actually aware of the forfeiture, or would have been aware, had he made reasonable inquiries).

---

[1] The Court notes that, as with Plaintiffs' other claims, the statute of limitations is likely not the only insurmountable obstacle to Plaintiffs' takings claim. For example, only the person who owns the property on the date of the taking is entitled to receive just compensation under the Fifth Amendment. United States v. Dow, 357 U.S. 17, 20-21 (1958); see also United States v. Land, 213 F.3d at 839.

## IV. CONCLUSION

As noted above, this Court already found in 2007 that anyone claiming an interest in Parcel Z-229-B "must have known that the Government condemned this property over 50 years ago." Indeed, as already noted in this Memorandum, that finding was made in an earlier action filed by one of the Plaintiffs in the instant case. He did not challenge that finding, nor do the current Plaintiffs allege any new facts challenging that finding. Plaintiffs have therefore failed to meet their burden of showing that the Court has subject-matter jurisdiction. The Court finds that all pertinent statutes of limitations on Plaintiffs' claims have expired long ago, and the Court now lacks jurisdiction to entertain them. The United States' Motion to Dismiss is GRANTED.

DONE at Laredo, TX, this 30th day of November, 2009.

_____
George P. Kazen
Senior United States District Judge